Beverly **MAHOMES**, Plaintiff,

v.

John E. **POTTER**, Postmaster General, Defendant.

C.A. No. 2:06–3634–CWH.

United States District Court, D. South Carolina, Charleston Division.

Nov. 20, 2008.

Deandrea Gist Benjamin, Donald Gist, Gist Law Firm, Columbia, SC, for Plaintiff.

Terri Hearn Bailey, US Attorneys Office, Columbia, SC, for Defendant.

### ORDER

C. WESTON HOUCK, District Judge.

On December 27, 2006, the plaintiff, Beverly Mahomes (the "plaintiff"), filed this suit against the defendant, Postmaster General John E. Potter (the "defendant"), alleging that her employment was terminated because of her race (African–American) and in retaliation for having engaged in activities protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17 (2000). On May 16, 2008, the defendant moved for summary judgment. On September 25, 2008, Magistrate Judge Robert S. Carr ("Magistrate Judge Carr") issued a report analyzing the issues and recommending that the Court grant the defendant's motion for summary judgment. On October 14, 2008, the plaintiff filed her objections to the report and recommendation, and on October 20, 2008, the defendant filed his reply to the objections.

■ This matter is now before the Court for disposition, The Court is charged with making a *de novo* determination of any portions of the magistrate judge's recommendation to which specific objection is made. 28 U.S.C. § 636(b). The Court evaluates the evidence without granting any deference to the magistrate judge's findings and conclusions. *Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); *Estrada v. Witkowski*, 816 F.Supp. 408, 410 (D.S.C.1993). The final decision is made by the Court based upon the actual record, not merely the magistrate judge's reported findings. *Wimmer v. Cook*, 774 F.2d 68, 76 (4th Cir.1985). The Court may accept, reject, or modify, in whole or in part, the report and recommendation, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The plaintiff brought two causes of action: (1) a claim that she was subjected to disparate disciplinary treatment on account of her race, resulting in wrongful termination; and (2) a claim that she was subjected to retaliation and eventual wrongful termination for engaging in activities protected by Title VII, specifically for

filing complaints with the Equal Employment Opportunity Commission ("EEOC") and grievances with the National Association of Letter Carriers (the union). Magistrate Judge Carr recommended that the plaintiff's claim for wrongful termination be dismissed because the plaintiff's employment had been terminated because of her repeated misconduct and violations of Postal Service procedures, and her termination was in compliance with its progressive disciplinary policy.[1] Magistrate Judge Carr found that the plaintiff could not rebut this legitimate non-pretextual reason and show pretext for race-based animus. Furthermore, the Magistrate Judge recommended that the plaintiff's retaliation claim should be dismissed because the plaintiff failed to exhaust her administrative remedies prior to bringing this action. Magistrate Judge Carr found that even if the plaintiff had exhausted her administrative remedies as to her retaliation claim, the plaintiff could not establish the third element of her prima facie case (that she was performing her job duties at a level that met her employer's legitimate expectations), nor could she demonstrate the required pretext.

After a full review of the record and pertinent case law, the Court adopts the report and recommendation and grants summary judgment to the defendant.

## Background

In 1985, the plaintiff began her employment as a letter carrier with the U.S. Postal Service in Chicago, Illinois. In 1988, the plaintiff transferred to Charleston, South Carolina. In October 2003, Tim Shaw (Caucasian) was appointed as the Postmaster in the area where the plaintiff worked. Later, the plaintiff transferred to the Post Office's North Charleston Branch and worked under an African–American branch manager. The plaintiff's employment was terminated by the defendant in 2006 because (1) she failed to follow a specific rule contained in the Employee and Labor Relations Manual ("ELM") when she did not immediately report an accidental fall which occurred on October 29, 2005; and (2) she failed to safely perform her mail-delivery duties, which caused her to fall.[2]

The plaintiff's termination for the October 29, 2005 disciplinary violation is viewed in light of the plaintiff's overall disciplinary history during the preceding two years. Pursuant to Article 16.10 of the National Agreement, a past offense is not to be counted against the employee in the progressive disciplinary scheme if he or she has been discipline free for two years. In the time period relevant to this case prior to her removal, the plaintiff did not have a two year period in which she was free of disciplinary action.

The record reflects that on August 11, 2003, the plaintiff received a 14–day suspension, reduced to a 7–day suspension, for failing to obey a direct order and failing to observe postal safety rules by driv-

---

1. The National Agreement between the Postal Service and the union sets out the progression to different levels of corrective disciplinary action as follows: first offense—Letter of Warning; second offense—a 7–Day Suspension; third offense—a 14–Day Suspension; fourth offense—a 30–Day Suspension, fifth and final offense—Removal. The record reflects that these progressive disciplinary steps were followed in this case. The plaintiff's immediate supervisor, Robin Chavis, testified that the plaintiff had been issued all steps of

discipline prior to being issued a letter of removal in December 2005. (*See* Chavis EEOC Investigative Affidavit at ¶ 9 (Docket # 67–21)).

2. Pursuant to the ELM at Sections 814.2(d) and (f), employees are responsible for performing all their duties in a safe manner and must immediately report any accident or injury in which they are involved to their supervisor, regardless of the extent of the injury or the amount of the damage. (Docket # 67–2).

ing with her door open, failing to set the hand brake on her vehicle after stopping to park, and leaving her vehicle unlocked. The plaintiff filed a charge through the EEOC on May 21, 2003. During an August 19, 2003 arbitration, the plaintiff and Postmaster Shaw agreed to settle the charge and agreed that the suspension would be reduced to a 7–day suspension which would be reissued on September 18, 2003. In exchange, the plaintiff agreed to withdraw her EEOC charge.

On February 24, 2004 and March 1, 2004, Customer Service Supervisor Renee Swain (African–American) informed manager Steve Gadson (Caucasian) that the plaintiff had refused to stop wearing headphones while walking, which is prohibited for safety reasons. The plaintiff received a 14–day suspension on April 21, 2004, for twice failing to follow instructions, unacceptable conduct, and failure to safely perform the duties of her position. On May 21, 2004, the plaintiff filed an EEOC charge regarding this discipline; the charge was resolved against her on January 4, 2005.

On January 15, 2005 and January 21, 2005, the plaintiff sent unprofessional notes to a postal customer, who complained to the plaintiff's supervisors. Supervisor Robin Chavis (African–American) requested that the plaintiff be removed for unacceptable conduct. The plaintiff filed a grievance with the union and on March 31, 2005, the plaintiff received a reduced punishment consisting of a 30–day suspension, from April 16, 2005 through May 15, 2005. On May 31, 2005, the plaintiff filed an EEOC charge over this discipline; the charge was resolved against her on July 12, 2005.

On October 29, 2005, the plaintiff fell while delivering mail. This incident resulted in her termination and is the basis of the present action. On November 3 or 4, 2005, some four or five days after the plaintiff fell, she reported the accident and notified her supervisor, Chavis, that she had incurred a work-related injury. Chavis initiated a disciplinary action against the plaintiff on December 6, 2005, for failing to safely perform her duties, which failure resulted in a fall on October 29, 2005, and for failing to immediately report the accident. On December 8, 2005, Chavis sent the plaintiff a Notice of Removal letter which stated that the plaintiff would be removed from the Postal Service effective 30 days from the date of her receipt of the letter. The plaintiff filed an appeal under the union's grievance-arbitration procedure and also filed an EEOC charge. The plaintiff's removal was upheld by the union at Step A and Step B. The plaintiff was allowed to continue working while she contested her removal. While her appeal was pending, the plaintiff again injured herself when she tripped over a tree stump on January 10, 2006, but she did not notify anyone until four days after the accident. The issue of whether the Postal Service had just cause to issue a Notice of Removal to the plaintiff on December 8, 2005 went to arbitration on March 1, 2006, and it was determined on April 29, 2006 that the plaintiff was discharged for just cause. Before the decision was issued, on April 18, 2006, the plaintiff filed a charge with the EEOC alleging race and gender discrimination and retaliation. She received an EEOC right to sue advisory as part of the final agency determination that her charge had no merit, and filed the present action.

## Standard of Review

When a party has moved for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail on

a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257, 106 S.Ct. 2505. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### The Plaintiff's Objections

The plaintiff objects to Magistrate Judge Carr's report and recommendations which found that she had failed to establish a prima facie case for either disparate discipline or discriminatory discharge due to race discrimination under Title VII. Furthermore, the plaintiff objects to the Magistrate Judge's findings that the plaintiff's retaliation claim was not cognizable because she had failed to exhaust her administrative remedies prior to filing this action.

### Disparate discipline or discriminatory discharge based on race

■ As Magistrate Judge Carr correctly stated, the elements of a prima facie case of disparate discipline are different from those elements needed to show a prima facie case of discriminatory discharge. (Report at 792–93). In order to establish a prima facie case of discrimina-

tion with regard to her disparate discipline claim, the plaintiff must show the following: (1) she is a member of a class protected by Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against her were more severe than those enforced against those other employees. (Report at 792, *citing Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985)).[3] In contrast, in order to establish a prima facie case of discriminatory discharge, the plaintiff must show the following: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) her position remained open or was filled by a similarly qualified individual outside the protected class. (Report at 792, *citing Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir.2006)). Magistrate Judge Carr analyzed the facts and correctly concluded that under either analytical framework, the plaintiff had failed to present a prima facie case.

■ In her objection, the plaintiff relies upon *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805 (5th Cir.1991), for the proposition that when analyzing alleged discriminatory discharge, Magistrate Judge Carr should have looked beyond the framework of analysis set forth in *Baqir v. Principi* and examined "the real issue of whether the defendant illegally discriminated against the plaintiff." (Pl. Obj. at 9–10, *citing Amburgey*, 936 F.2d at 812). The plaintiff has misquoted the text from *Amburgey* on page 10 of her objections.[4]

---

**3.** In *Moore,* the Fourth Circuit Court of Appeals adopted the *McDonnell Douglas* paradigm of analysis for use in the employee discipline context.

**4.** In the first full paragraph on page 10 of the plaintiff's Objections, she credits *Amburgey*

(Pl. Obj. at 10). Moreover, the plaintiff's reliance upon *Amburgey* is misplaced, as that case is easily distinguishable from the case at bar. In *Amburgey*, the Fifth Circuit addressed the requisite elements of proof in an age discrimination case arising out of a termination in connection with a reduction in force. The *Amburgey* court instructed trial courts reviewing age discrimination cases involving reductions in force to look beyond whether most of the retained employees were in the protected age group, and examine the effect of the reduction in force on the plaintiff claiming age discrimination. The complete quotation from *Amburgey* fully illustrates that it has no bearing on the present case:

> As in *Thornbrough* [*v. Columbus and Greenville R. Co.*, 760 F.2d 633, (5th Cir.1985) ], there was not only no statistical evidence of discrimination, but the statistics suggested the reverse. In *Thornbrough*, the company actually raised the average age of its employees as a result of the layoffs. Here, Amburgey was not the oldest employee dismissed, and most of the retained employees were in the protected age group. But as we said in *Thornbrough*, "[w]hile this evidence is probative of the age discrimination issue, it is not dispositive. The issue ... is whether the [defendant] discriminated against [the plaintiff], not whether it discriminated against other older employees."

*Amburgey*, 936 F.2d at 813, *citing Thornbrough*, 760 F.2d at 646 n. 20. In the present case, Magistrate Judge Carr properly analyzed the plaintiff's discriminatory discharge claim based upon race and found that she failed to present a prima facie case because she could not establish that she was performing her job duties at a level that met her employer's legitimate expectations. (Report at 794, 789–90). In her objections, the plaintiff contends that she did not violate any of the defendant's policies, and that Magistrate Judge Carr erred by "put[ting] primary emphasis on the fact that Plaintiff received three or four disciplinary infractions over a two year period from Defendant Postmaster Tim Shaw, ... and the Magistrate accepted this disputed disciplinary information as conclusive evidence that Plaintiff was not meeting her employer's legitimate expectations and that was the sole basis why Plaintiff could not establish that third element." (Pl. Obj. at 11–12; *see also* Report at 794).

■ There is nothing "disputed" about the progressive discipline that the plaintiff received. As Magistrate Judge Carr accurately found, "[a]ll the incidents of discipline of the Plaintiff are fully documented in the record, and she brought union grievances and some EEO charges over them as well. Although she was successful in getting some of her punishments reduced, she still remained within the relevant progressive disciplinary steps." (Report at 789). The plaintiff's allegations that she did not violate any of the defendant's policies, and her claim that she was performing her job duties at a level that met her employer's legitimate expectations at the time, are completely without support in the record. Indeed, courts have held, under a variety of civil rights laws, that it is the employer's perception of job performance, and not the employee's perception, that is controlling. *See, e.g., DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir.

---

with the statement that "[c]ourts must not allow the mechanical formula to blind them to the real issue of whether the defendant illegally discriminated against the plaintiff." In fact, that quotation is from *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir.1980),

wherein that court addressed alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1870, 42 U.S.C. § 1983, and the Ku Klux Klan Act, 42 U.S.C. § 1985(3).

1998) (Pregnancy Discrimination Act); *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996) (Title VII), *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988) (Age Discrimination in Employment Act). The Court finds that the magistrate judge used the proper legal framework to analyze the plaintiff's claim alleging discriminatory discharge.

■ Next, the plaintiff contends that, in the context of discriminatory disciplinary actions, Magistrate Judge Carr should have compared the plaintiff's offenses and the resulting disciplinary action with similar offenses committed by other persons outside the plaintiff's class and the discipline they received. The plaintiff bases her argument on *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993) and *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985). (Pl. Obj. at 10–11). These are the same cases that Magistrate Judge Carr cited and relied upon in analyzing the plaintiff's prima facie case of disparate discipline. (Report at 792; *see also supra* at p. 7). The Court finds that the magistrate judge used the proper legal framework to analyze the plaintiff's claim alleging discriminatory discipline.

The plaintiff also argues that she was treated less favorably than Dennis Shelby (Caucasian), James Lowery (Caucasian), and Mark Conway (Caucasian), because the prohibited conduct in which she engaged was comparable in seriousness to the misconduct of those employees, all of whom are outside the protected class, but that the disciplinary measures enforced against her were more severe than those enforced against those employees.[5] (Pl. Obj. at 11–12). Specifically, the plaintiff objects to the magistrate judge's finding that she was not similarly situated to Dennis Shelby and contends that Shelby's disciplinary history was similar to hers, but that race discrimination motivated the defendant to treat her differently. (Pl. Obj. at 13–14), However, the plaintiff's claim that she and Shelby are similarly situated is not supported by the facts of record.[6] As mentioned previously, Article 16.10 of the National Agreement between the Postal Service and the union sets out the progressive levels of discipline as well as a policy which prevents consideration of an employee's prior disciplinary record if there has been no disciplinary action initiated against the employee for a period of two years. Shelby, a Caucasian letter carrier, incurred a job-related injury on January 14, 2006, but did not report it until January 18, 2006. Shelby was given a written warning for this incident. (Docket # 67–27). However, Shelby had not been disciplined for over two years before that incident. (Docket # 38–23 (Shelby disciplinary file)). In contrast, the plaintiff had failed to immediately report an accident and had failed to safely perform her job duties, and was presented with a Notice of Removal. Unlike Shelby, the plaintiff had

---

**5.** James Lowery and Mark Conway were involved in the conversation regarding the gun, the facts of which gave rise to the plaintiff's claim of retaliation under Title VII, and which will be discussed *infra*.

**6.** The plaintiff's claim (Pl. Obj. at 14), with respect to Dennis Shelby's disciplinary records, that the defendant produced only one warning letter dated February 9, 2006 is not true; it is obvious that the defendant produced Shelby's Step B decision dated April 3, 2006 because the plaintiff has relied upon it.

(Docket # 78–12, Pl. Ex. 11, attached to Pl. Mem. Opp. S.J.). Indeed, there is no merit to the plaintiff's repeated claims (Pl. Obj. at 14, 15–17) that Shelby's disciplinary records were not made available. These records were filed with the Court on November 27, 2007 as exhibits to the defendant's motion for summary judgment. (Docket # 38–19, Shelby Letter of Warning; # 38–20; Shelby Notice of 7 day suspension; # 38–21, Shelby Step B Decision; # 38–22, Shelby Disciplinary Records).

accumulated over the previous two years a disciplinary record which reflected a 7–day suspension, a 14–day suspension, and a 30–day suspension. Therefore, even though Shelby's misconduct was similar to the plaintiff's, in that each had failed to immediately report an accident, the failure to report was Shelby's only "active" infraction (that is, occurring within the two year period). While both the plaintiff and Shelby were disciplined for similar misconduct, it is uncontested that, unlike the plaintiff, Shelby had not reached the end the progressive disciplinary process when he broke the reporting rules and failed to perform his work in a safe manner. The disciplinary history of the two employees was not similar, and therefore the Court concludes that Shelby is not an appropriate comparator.

The plaintiff raises several other objections to Magistrate Judge Carr's report. First, the plaintiff contends that the defendant never produced a final written notice of termination stating the reason(s) for her termination. (Obj. at 13). This claim is incorrect. The document, titled "Notice of Removal," was, in fact, attached to the defendant's memorandum in support of summary judgment filed in November 2007 (Docket # 38–11), as well as to the defendant's renewed memorandum in support of summary judgment (Docket # 67–19), as well as to the plaintiff's memorandum of law in opposition to the defendant's renewed motion for summary judgment (Docket # 78–9), and to the defendant's reply memorandum in support of summary judgment (Docket # 81–5 at 28).

Next, the plaintiff contends that she never received any performance evaluations indicating she was performing her job in an inappropriate manner. (Pl. Obj. at 13). This objection is without merit.

The plaintiff has not offered any evidence that the Postal Service gave formal performance appraisals to letter carriers, nor has she identified any letter carrier or other similarly situated employee who received a performance appraisal. The plaintiff's supervisor, Robin Chavis, testified that letter carriers were not evaluated. (Chavis Dep. at 47–49).[7] The reason the plaintiff never received a performance evaluation is because postal employees do not receive these evaluations.

### Retaliation under Title VII

The plaintiff next contends that the magistrate judge erred when he held that the plaintiff was unable to establish a causal connection between her protected activity and her termination because the temporal proximity was too attenuated. (Pl. Obj. at 17–18, *citing* Report at 795). With respect to safeguarding protected activity, Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees ... because [the employee] ... has made a charge ... under this subchapter." 42 U.S.C. § 2000e-(a).

■■■ To establish a prima facie case under Title VII for retaliation, the plaintiff's evidence must demonstrate that: (1) she engaged in protected activity under Title VII; (2) the employer took adverse employment action against her; and (3) there was a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. *Price v. Thompson,* 380 F.3d 209, 212 (4th Cir.2004) (citations omitted). As Magistrate Judge Carr noted, the plaintiff's only evidence of causation is the temporal proximity of certain events. (Report at 795–96). The magistrate judge found that the plaintiff had last engaged in

---

7. The defendant has quoted from Chavis' deposition in his response to the plaintiff's objections but the actual pages to which the defendant refers are not contained in the file before this Court. *See* Docket # 96 at 5 & n.7.

protected activity on May 31, 2005 (the date she filed a charge of discrimination) and that her notice of termination on December 8, 2005, some six months later, was too attenuated in time to show causation. (Report at 795). The Court agrees with the magistrate judge's conclusion. In *Mitchell v. Secretary Veterans Affairs,* 467 F.Supp.2d 544, 553–54 (D.S.C.2006), the Court held that to prove a causal connection based on temporal proximity alone, the time between the protected activity and the adverse employment action must be "very close." *Mitchell,* 467 F.Supp.2d at 553–54. *citing Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam); *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir.1986) (protected activity must be "closely followed by adverse actions," and one-month period was sufficient to make out a prima facie case of retaliation.). In *Mitchell,* the Court held that a causal connection was shown through temporal proximity when a plaintiff was terminated three weeks after he complained to his supervisor about perceived discrimination. *Mitchell,* 467 F.Supp.2d at 553–54. Likewise, in *Fleming v. S.C. Dept. of Corrections,* 952 F.Supp. 283 (D.S.C.1996), the Court held that a transfer one month after a plaintiff engaged in protected activity was "strongly suggestive of retaliatory motive." *Fleming,* 952 F.Supp. at 288. In Comparison, in *Pascual v. Lowe's Home Centers, Inc.,* 193 Fed.Appx. 229 (4th Cir. 2006) (per curiam), the Fourth Circuit held that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities from the termination of that plaintiff's employment. *Pascual,* 193 Fed.Appx. at 233. In the present case, the magistrate judge properly recommended judgment for the defendant on the retaliation claim.

In her objections, the plaintiff argues that Magistrate Judge Carr evaluated the wrong sequence of events when analyzing and dismissing her retaliation claim. (Pl. Obj. at 18). The plaintiff contends:

Defendant retaliated against Plaintiff for engaging in prior acts of protected activity of filing grievances and EEOC charges against him [sic] by subjecting Plaintiff to progressive disciplinary measures. During the latter sequence of events involving Plaintiff's fall while delivering mail on October 29, 2005, Robin Chavis, under the direction and with the final approval of Defendant Shaw, initiated disciplinary action against Plaintiff on December 6 and 8, 2005. Plaintiff was issued a notice of removal letter at that time, which was to be effective in 30 days. It is Plaintiff's appeal to this disparate progressive disciplinary action taken against her, under which she contested her removal, and the Defendant's subsequent actions that constitute retaliation.

(Pl. Obj. at 18).

After a close study of the record, the Court finds that the magistrate judge evaluated the correct sequence of events. As mentioned previously, the plaintiff challenged the Notice of Removal (received on December 21, 2005), through the union grievance procedures and through the EEOC process, and the Postal Service allowed her to work pending these appeals. Her union grievance was not solved informally or at the Step B level but went to a formal arbitration hearing, and following a full hearing on March 14, 2006, the arbitrator upheld the removal as for just cause on April 29, 2006. The present litigation arises out of the EEOC administrative complaint that stemmed from the Notice of Removal.

As the defendant correctly notes, the plaintiff has confused the December 8,

2005 Notice of Removal with the emergency placement imposed on the plaintiff on February 2, 2006 due to an incident which had occurred the day before at the workplace, when the plaintiff and fellow postal workers James Lowery and Mark Conway had a conversation about a postal worker who carried a gun to work and killed several co-workers. During the conversation, the plaintiff stated that she was considering buying a gun because she feared for her life. Lowery offered to sell her a gun which he had in his car. This conversation was overheard by the plaintiff's immediate supervisor, Robin Chavis, who contacted Postmaster Shaw. (Docket # 78–15 at 9–13 (Chavis Dep.)). As a result, the next day, as the plaintiff completed her route, she was met by Shaw, a postal inspector, and two armed North Charleston policemen who detained, searched, and questioned the plaintiff about a gun. The plaintiff was removed and banned from property under threat of arrest by Postmaster Shaw, and placed on "off duty" status i(without pay) as part of an emergency placement arising out of safety concerns. The plaintiff grieved the emergency placement resulting from the gun conversation with her union, and also filed a complaint with the EEOC.

 With respect to plaintiff's grievance filed with the union with respect to the gun incident, the Step B team ruled on March 14, 2006 that there was no evidence that she intended to harm anyone at the Post Office. Thus, the grievance was resolved in the plaintiff's favor and she was compensated for her lost wages for the balance of one day, February 2, 2006. Thereafter, the plaintiff withdrew her pending EEOC complaint about the gun incident and acknowledged that in doing so she was waiving any right to further complain. (Docket # 67–55). When the plaintiff withdrew her pending EEOC complaint regarding the gun incident, she abandoned her discrimination claim at the administrative level, and in doing so failed to sufficiently exhaust the claims to permit district court review. It is well-settled that a Title VII plaintiff is required to exhaust administrative remedies prior to bringing an action in district court. *See Bryant v. Bell Atlantic Maryland Inc.,* 288 F.3d 124, 132 (4th Cir.2002) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC"). Thus, to the extent that the plaintiff alleges that the discipline surrounding the gun incident was retaliation for prior protected activity, this retaliation claim should be dismissed, because the plaintiff withdrew her EEOC complaint regarding the incident and therefore failed to exhaust her administrative remedies.

The plaintiff mistakenly claims that she exhausted her administrative remedies because her grievance was heard by the Step B team. It is apparent that the plaintiff has confused exhaustion of the union grievance process with the administrative exhaustion required before a civil suit may be filed. Furthermore, the plaintiff's claim that the Step B team "ordered" her back to work (Pl. Obj. at 20) is incorrect. The Step B team did not direct that she be reinstated;, but only ordered that she be compensated for loss of pay incurred on February 2, 2006 and that the emergency placement be expunged from her record. (Docket # 94–10).

In conclusion, the plaintiff claims that she was terminated by the defendant as a result of disparate disciplinary treatment because of her race, which resulted in wrongful termination, and further that she was subjected to retaliation for engaging in protected activities. The plaintiff has failed to prove a prima facie case as to these claims, because she cannot show that she was performing her job duties at a level that met her employer's legitimate expectations. In addition, the plaintiff's

retaliation claim fails because she failed to exhaust the EEOC's administrative process prior to bringing this action. Therefore, the defendant's motion for summary judgment is granted.

**AND IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*

ROBERT S. CARR, United States Magistrate Judge.

This employment case brought by a former U.S. Postal Service city letter carrier alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment under Fed.R.Civ.P. 56 filed on May 15, 2008. 28 U.S.C. § 636(b).

On December 27, 2006, the plaintiff, Beverly Mahomes, an African–American, filed this suit against Postmaster General John E. Potter, and alleged that she was fired because of her race and in retaliation for having engaged in activities protected by Title VII. The motion was opposed on June 30, 2008, and the defendant filed a reply on July 25, 2008. Oral argument on the motion was had before the undersigned on August 14, 2008. Hence, it appears that consideration of the motion is appropriate.

Plaintiff Mahomes brought two (2) causes of action: first a claim that she was subjected to disparate disciplinary treatment on account of her race, resulting in her termination, and second, a claim that she was subjected to retaliation for engaging in activities protected by Title VII, specifically for filing complaints with the EEOC and grievances with her Union, resulting in her termination.[1]

The defendant Postmaster General moved to dismiss the retaliation claim for failure to exhaust her administrative remedies. Defendant also contends that Plaintiff cannot establish the third element of her *prima facie* case, that she was performing her job duties at a level that met her employer's legitimate expectations. Further, the defendant claimed that the agency terminated Plaintiff's employment because of her repeated misconduct and violations of Postal Service procedures in compliance with its progressive disciplinary policy, and that Plaintiff cannot rebut this legitimate non-pretextual reason and show pretext for race-based animus. Additionally if the retaliation[2] claim were to go forward, Plaintiff again cannot demonstrate the required pretext.

## *SUMMARY JUDGMENT STANDARD*

To grant a motion for summary judgment, this court first must find that "there

---

1. In the complaint, Plaintiff claims that the Notice of Removal dated December 8, 2005, was issued in retaliation for her protected activity of filing and pursuing discrimination complaints. Specifically, in paragraphs 30–31 of her complaint, Plaintiff alleges that she filed formal EEO complaints on May 21, 2004, which was about the discipline for wearing headphones, agency case 4C–290–0039–04, and on May 31, 2005, which was about rude remarks to postal patron Ingram, agency case 4C–290–0041–05, as well as an informal complaint on August 26, 2005. The defendant has no record of the August 26, 2005, informal complaint.

2. Defendant correctly argues "Title VII only prohibits retaliation for protected EEO activity, not on-the-job injuries or union activity. There is no waiver of sovereign immunity such as would allow subject matter jurisdiction over claims of retaliation for on-the-job injuries or union activity." Relief for retaliation for on the job injuries is only available pursuant to FECA which is not at issue here, and retaliation for Union grievances is only available through an action for the union's breach of the duty to provide fair representation pursuant to 39 U.S.C. § 1208(b).

is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–23 (4th Cir.1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

██ Speculation is not enough to withstand a motion for summary judgment. *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 242 (4th Cir.1982). Such bald, unsupported, and conclusory allegations do not constitute evidence and therefore do not create triable issues of fact. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). A plaintiff's beliefs, just like conclusory allegations, speculation, and conjecture are simply insufficient to defeat a properly supported motion for summary judgment. *See, Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

In summary, the plaintiff must present admissible evidence which raises a material and genuine factual dispute. "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### FACTS

The facts, either undisputed or as shown by the plaintiff as the non-moving party, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

The plaintiff, Beverly Mahomes, an African–American female, was employed as a letter carrier by the U.S. Postal Service from 1985 until her employment was terminated in December 2005 because, according to Defendant, 1) she failed to follow instructions[3] by not immediately reporting an accidental fall which occurred on October 29, 2005, and 2) failing to safely perform her duties, which failure caused the fall. Thereafter Plaintiff applied for work at United Parcel Service in May 2006, was immediately hired, and

---

**3.** Pursuant to the Employee and Labor Relations Manual (ELM) §§ 814.2(d)(f), employees are responsible for performing all their duties in a safe manner and must immediately report any accident or injury in which they are involved to their supervisor, regardless of the extent of the injury or the amount of the damages.

as of the date of her deposition, she continued to work there.

Plaintiff's theory of the case is that Postmaster Tim Shaw, white, is the decision-maker making employment decisions illegally based on an employee's race and protected activity and is the "puppet master" over the various black supervisors, Elaine Swain and Robin Chavis, and various white supervisors, Steve Gadson and Steve Slaughter, who were involved in the numerous disciplinary actions taken against Plaintiff. Shaw became Postmaster in Plaintiff's area in October 2003.[4]

According to the defendant, Plaintiff had progressed through the first four discipline levels of its progressive disciplinary procedures when she was removed because she did not immediately report an accidental fall and failed to follow safety rules.

Plaintiff was a member of the National Association of Letter Carriers (NALC) and the National Agreement between the Postal Service and the NALC sets out the progression to different levels of corrective disciplinary action as follows: first offense-Letter of Warning; second offense-a 7-Day Suspension; third offense-a 14-Day Suspension; fourth offense-a 30-Day Suspension, fifth and final offense-Removal.

A past offense is not be counted against the employee in the progressive disciplinary scheme if he or she has been discipline free for two (2) years. The retention of disciplinary records is controlled by Article 16.10 of the Collective Bargaining Agreement with the NALCs, the "Employee Discipline Records" article, which reads:

> The records of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee

for a period of two years. Upon the employee's written request, any disciplinary notice or decision letter will be removed from the employee's official personnel folder after two years if there has been no disciplinary action initiated against the employee in that two-year period.

There has not been any 2 year period during which the plaintiff was free of disciplinary action prior to her removal which is relevant here. All the incidents of discipline of the plaintiff are fully documented in the record, and she brought union grievances and some EEO charges over them as well. Although she was successful in getting some of her punishments reduced, she still remained within the relevant progressive disciplinary steps.

For her claim that she was terminated while other similarly situated white employees were not terminated for similar conduct, the disparate treatment claim, Plaintiff's comparator is Dennis Shelby. Shelby is a white carrier who, on January 14, 2006, incurred a job-related injury, but did not report it until January 18, 2006. Shelby was given a written warning for this incident. (Def. Ex. 18). However, Shelby had no discipline history within the 2 years prior to his discipline for failure to immediately report his accident and his failure to follow safety rules.

Plaintiff points to other white employees who broke the rules in some manner and were not fired, but their conduct is dissimilar; the only one which concerned a failure to report an accident at once and a failure to follow safety rules is Dennis Shelby. Further, none of Plaintiff's alleged comparators had reached the end of the progressive disciplinary process when they broke rules.

---

4. Plaintiff complains about incidents with Shaw dating from that time, however, her EEO charge could only go back 300 days from the date the charge was filed, April 18, 2006. Any prior acts would be time barred. 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117.

The plaintiff also asserts she was punished more harshly in another disciplinary action. This concerned her participation in a conversation about a gun while at work which was overheard by her supervisor. This happened after she had been fired for the failure to immediately report an accident and failure to follow safety procedures, but she was still coming to work because she grieved the removal and her grievance was pending.

On February 1, 2006, the plaintiff and fellow postal workers James Lowery, and Mark Conway were engaged in a conversation about a postal worker who carried a gun to work and killed several co-workers. During the conversation, Plaintiff stated that she was considering buying a gun because a man had been killed in her backyard, and she feared for her life. Lowery made an offer to sell her a gun which he had in his car. Plaintiff's immediate supervisor, Robin Chavis, an African–American, overheard the gun conversation and immediately reported the conversation to Postmaster Shaw. (Chavis Dep. Pgs. 127–130). As a result, the next day, February 2, 2006, when Plaintiff completed her route she was met by Shaw, the postal inspector, and two armed North Charleston policemen who immediately detained, searched, and questioned Plaintiff about a gun. She was removed and banned from property under threat of arrest by Postmaster Shaw. (Pl. dep. pgs. 187–188, Chavis dep. pg. 131: Ex. 9).

Plaintiff grieved the gun conversation removal and the Step B Team ruled that there was no evidence that Plaintiff intended to harm anyone at the Post Office and reduced her removal to a 2 week suspension. Since the grievance was resolved in Plaintiff's favor, she was compensated for her lost wages for the balance of that one day. Still, she was not returned to work because the grievance about the earlier fall was resolved against her and that removal was upheld. (Pl. Ex. 10).

Thereafter, Plaintiff withdrew her complaint about the gun conversation discipline and acknowledged that in doing so she was waiving any right to further complain. (Def. ex. 57). Since Plaintiff did not pursue her complaint about the gun incident when she had administrative remedies available to her, Defendant asserts that plaintiff cannot seek a remedy here.

In order to understand the events which comprised the first four steps of Plaintiff's disciplinary history which led up to her removal a time line is helpful.

### Time Line for Disciplinary Action and Grievances

INCIDENT OF AUGUST 11, 2003, involved Shaw's surveillance of Plaintiff's delivery route. She received a 14–day suspension issued by Postmaster Shaw for failing to obey a direct order and failing to observe postal safety rules including driving with her door open, failing to secure her vehicle upon stopping, and leaving her vehicle unsecured. A charge was filed by Plaintiff through the EEO on May 21, 2003. Thereafter, Plaintiff and Shaw agreed to settle the charge during a August 19, 2003, arbitration. They agreed that the suspension would be reduced to a 7–day suspension which would be reissued on September 18, 2003. In exchange the plaintiff agreed to withdraw her EEO charge. (Def. Ex. 12).

On October 11, 2003, Plaintiff contacted the EEO office with a new complaint, alleging that the Notice of 7–Day Suspension was deficient because it did not contain the dates the suspension was to be served. Because this new complaint was viewed as a claim that the agency had breached the settlement agreement, the suspension was held in abeyance pending resolution of Plaintiff's new complaint. To cure the breach, management agreed to

rescind the notice of suspension and issued a new notice of suspension, dated April 9, 2004, for failing to obey a direct order and failing to observe Postal safety rules. This reissued suspension included the dates the suspension would be served, beginning April 26, 2004, and ending on May 2, 2004. Plaintiff did not further pursue the matter and again withdrew her EEO charge.

INCIDENT OF FEBRUARY 24, 2004, and MARCH 1, 2004, involved the plaintiff's repeated refusals to stop wearing headphone while walking, which is prohibited for safety reasons. A 14–day suspension was issued on April 21, 2004, for twice failing to follow instructions, unacceptable conduct,[5] and failure to safely perform the duties of her position because she wore headphones when moving about. Customer Service Supervisor Renee Swain, an African–American, reported Plaintiff to manager Steve Gadson, white, who issued the discipline.

On May 21, 2004, Plaintiff brought an EEOC charge over the earphones discipline which was resolved against her on January 4, 2005. (Agency case number 4C–290–0039–04 Def. ex. 33).

INCIDENT OF JANUARY 15 AND 21, 2005, involved the plaintiff sending unprofessional notes to a postal patron and calling him disrespectful names. Plaintiff wrote notes to a postal patron on her route, Fred W. Ingram, who she called "Old Man Ingram" and Ingram complained to plaintiff's supervisors. Removal was requested by Supervisor Robin Chavis, African American. This request for removal of the plaintiff was for unacceptable conduct on January 15, 2005, and January 21, 2005. Plaintiff filed a grievance through the Step B team which, on March 31, 2005, reduced the removal to a 30–day suspension to run from April 16, 2005, through May 15, 2005, for the unacceptable conduct. (Def. Ex. 15).

On May 31, 2005, Plaintiff brought an EEOC charge over the Old Man Ingram discipline which was resolved against her on July 12, 2005. (Agency case number 40290–0041–05 Def. ex. 33).

INCIDENT OF OCTOBER 29, 2005, involved Plaintiff's fall while delivering mail. This is the incident which resulted in her removal and is the removal complained of in the instant action. Chavis initiated a disciplinary action against the plaintiff on December 6, 2005, and December 8, 2005, for failing to safely perform her duties which failure resulted in a fall on October 29, 2005, and for failing to immediately report[6] the accident. Plaintiff received the notice of removal letter from Chavis. Removal was to be effective in 30 days. An appeal under the Grievance–Arbitration procedure of the NALC was filed by the plaintiff as well as an EEOC charge. The removal was upheld at Step A and Step B. The matter went to arbitration on March 1, 2006, and it was determined on April 20, 2006, that Plaintiff was discharged for just cause.[7] (Def. Ex.

---

5. Plaintiff talked back to her supervisors saying "it's none of your business" and "you can kiss my boot" to both of them.

6. On November 3 or 4, 2005, the plaintiff formally reported the accident which had occurred five days earlier on October 29, 2005, and notified her supervisor that she had incurred a work-related injury. The supervisor overheard a conversation Plaintiff had with co-workers 7 hours after the fall on the day of the accident, but the arbitrator found that

such awareness did not excuse the plaintiff from compliance with the formal accident reporting requirements.

7. The arbitrator issued his award on April 29, 2006, finding that "[t]he grievant was discharged for just cause: "A preponderance of the evidence supports the conclusion that the grievant failed to follow instructions by not immediately reporting an accident as charged. It is not a question of whether the grievant actually suffered an injury which is

12). Plaintiff was allowed to continue working while she contested her removal. While her appeal was pending the plaintiff again injured herself in a fall on January 10, 2006, and did not notify anyone until 4 days after the accident. She filed a charge with the EEOC on April 18, 2006, alleging race, gender, and reprisal discrimination. She received an EEO right to sue advisory as part of the final agency determination that her charge had no merit. This action followed timely.

### RACIAL DISCRIMINATION LAW

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race...." 42 U.S.C. § 2000e–2(a)(1).

A plaintiff can prove defendant's motive to discriminate by two methods. The plaintiff may meet this burden under the ordinary standards of proof by direct evidence relevant to and sufficiently probative of the issue. It is undisputed that the record here contains no direct evidence of racial discrimination.

In the alternative, a plaintiff may rely upon circumstantial evidence using the judicially created burden shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *EEO v. Clay Printing Company*, 955 F.2d 936 (4th Cir.1992). The United States Supreme Court articulated a three-part anal-

ysis for analyzing discrimination claims in *McDonnell Douglas*. First, Plaintiff must establish a prima facie case of discrimination. In order to establish a *prima facie* case of discriminatory discharge, courts in the Fourth Circuit have held that the Plaintiff must demonstrate that: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) her position remained open or was filled by a similarly qualified applicant outside the protect class. *See, e.g., Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir.2006.)

In order to establish a *prima facie* case of discrimination with regard to her disparate discipline claim, Plaintiff must show the following: 1) that she is a member of a class protected by Title VII; 2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; 3) and that the disciplinary measures enforced against her were more severe than those enforced against those other employees. *See, Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985).

Second, if a *prima facie* case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the plaintiff. Once this presumption has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Third, if the

controlling here. Management should be notified by a proper report that an accident occurred, whether or not it resulted in injury or damage, so that it may take appropriate action. Such action includes an examination of the scene in a timely manner to assist in determining the cause of the accident if possi-

ble, and to prevent future accidents which may result in injury or damage. Laughing about tumbling off a porch may be one way to deal with the potential dangers of the job of letter carrier, but it does not comport with accident reporting requirements." (Def. ex. 22).

employer articulates a legitimate, non-discriminatory reason for its actions, the burden is then on the plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on illegal racial animus. *McDonnell Douglas,* 411 U.S. at 802–805, 93 S.Ct. 1817; *Texas Dep't of Community Affairs,* 450 U.S. at 252–256, 101 S.Ct. 1089.

■■■ Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. *Texas Dep't of Community Affairs,* 450 U.S. at 252–253, 101 S.Ct. 1089; *see also, St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■■■ If an employer uses unwise criteria in making personnel decisions, that does not amount to illegal discrimination. *See, Jiminez v. Mary Washington College,* 57 F.3d 369, 383 (4th Cir.1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). Liability can attach only for decisions motivated by illegal racial animus.

■■■ In the end, the plaintiff in a disparate treatment case such as this must prove that "but for" his race, he would not have been subjected to an adverse employment action. *Holmes v. Bevilacqua,* 794 F.2d 142 (4th Cir.1986).

### RETALIATION LAW

Plaintiff also claimed she was discharged in retaliation for her having engaged in activity protected by Title VII. To establish a *prima facie* case of retaliation, a plaintiff must prove three elements: (1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action. *See, Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), *cert. denied,* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

■■■ Under the burden-shifting scheme, if Plaintiff succeeds in establishing a *prima facie* case, the burden of going forward shifts to Defendant to provide evidence of a legitimate non-discriminatory reason for taking the adverse employment action. *See, e.g., Matvia v. Bald Head Island Manag.,* 259 F.3d 261, 271 (4th Cir.2001); *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir.2000). Should Defendant articulate a non-discriminatory reason, the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation. *Smith,* 202 F.3d at 248. To do so, Plaintiff must demonstrate, through either direct or circumstantial evidence, "both that the [proffered nondiscriminatory] reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In applying *St. Mary's,* the Fourth Circuit has held "that to survive a motion for summary judgment under the *McDonnell Douglas* paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." *Vaughan v. The Metrahealth Cos.,* 145 F.3d 197, 202 (4th Cir. 1998); *Smith,* 202 F.3d at 249. As such, in order to avoid summary judgment, Plaintiff must present some evidence, either

direct or circumstantial, that Defendant's stated reason for terminating Plaintiff was a pretext for retaliation.

### DISCUSSION

A review of the record and relevant case law reveals that the defendant is entitled to judgment as a matter of law on all claims.

Plaintiff's claims are subject to summary judgment because the plaintiff did not exhaust her administrative remedies regarding the gun conversation discipline as required to bring a retaliation cause of action, nor has she forecast evidence to establish a *prima facie* case of discriminatory discipline on account of race or retaliation for engaging in protected activity in regard to the removal, and she has not rebutted the defendant's legitimate non-discriminatory reason for it's decision.

#### Exhaustion of retaliation claim regarding the gun conversation

To the extent[8] that the plaintiff alleges that the defendant is liable to her because she was disciplined for her participation at work in the conversation about guns in retaliation for prior protected activity, that claim should be dismissed because the plaintiff did not exhaust her EEO remedies; indeed she dismissed her pending EEO charge. On April 25, 2006, after learning that her records had been corrected and that she had been paid for the time she had been placed on emergency leave, Plaintiff withdrew her request for EEO counseling on her formal complaint in its entirety. Her signature on PS Form 2564–C, denominated "Withdrawal of Complaint of Discrimination" indicates as follows:

> I fully understand that by withdrawing the complaint or allegation(s) I have withdrawn, I am waiving my rights to any further appeal of this allegation(s) through the EEO process.
>
> I further stipulate that my withdrawal did not result from threat, coercion, intimidation, promise or inducement.

Def. ex. 57.

A Title VII plaintiff is required to exhaust administrative remedies prior to bringing an action in district court. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atlantic Maryland Inc.,* 288 F.3d 124, 132 (4th Cir.2002). Plaintiff here waived or abandoned her discrimination claim at the administrative level, and in doing so failed to sufficiently exhaust the claims to permit district court review. *See, e.g., Khader v. Aspin,* 1 F.3d 968, 971 (10th Cir.1993) (citing *Rivera v. U.S. Postal Service,* 830 F.2d 1037, 1039 (9th Cir.1987)); *Coffman v. Glickman,* 328 F.3d 619, 624 (10th Cir. 2003). This claim, to the extent it was brought at all, is subject to dismissal on that basis alone.

#### Wrongful termination because of race

Plaintiff has not forecast evidence sufficient to establish a *prima facie* case of discriminatory discharge based on race because she cannot establish the third element, i.e., that she was performing her job duties at a level that met the employer's legitimate expectations. Here, the fact is that Plaintiff accumulated three or four serious disciplinary infractions over a two year period and, therefore, it cannot be said that she was meeting her employer's legitimate expectations.

Nor can Plaintiff demonstrate disparate discipline because she cannot show that she was similarly situated to her compara-

---

**8.** It does not appear that this claim is included in the complaint but the plaintiff repeatedly argued that she is suing on it and the defendant seeks judgment as to the allegation.

tor, Dennis Shelby. In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparators are similarly situated in all relevant respects. *See, Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992); *see also, Lanear v. Safeway Grocery,* 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); *see also, Heyward v. Monroe,* 166 F.3d 332 (4th Cir.1998).

While both Plaintiff and Shelby failed to immediately report an accident, it is uncontested that, unlike the plaintiff, Shelby had not reached the end the progressive disciplinary process when he broke the reporting rules and failed to perform his work in a safe manner. Shelby had no live disciplinary actions in his record under the progressive disciplinary frame work, while Plaintiff reached the end of progressive disciplinary process when she failed to report an accident and failed to perform her work in a safe manner. Rather than suggesting discrimination, these facts merely show that Shelby got the discipline the progressive disciplinary frame work called for and so did the plaintiff. The claim should be dismissed.

### Retaliatory Termination

The defendant is entitled to judgment as a matter of law on Plaintiff's claim that she was terminated in retaliation for having brought prior EEOC complaints in violation of Title VII because Plaintiff is unable to establish causation, an essential element of the *prima facie* case.

The initial burden is on the plaintiff to establish a *prima facie* case. Although the plaintiff can establish the first two elements, she fails in the third: she has no direct evidence of causation and must rely on the proximity of events to establish the causal link. The Supreme Court has observed that plaintiffs can rely on temporal proximity between the protected activity and the injury to establish causation, provided that the temporal proximity is "very close." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

It is undisputed that Plaintiff last engaged in relevant protected activity on May 31, 2005, but that management did not issue a notice of termination until December 8, 2005, six (6) months later. Causation is not established with such an attenuated connection. *See, e.g., Pascual v. Lowe's Home Centers, Inc.,* 193 Fed.Appx. 229, 232 (4th Cir.2006) (holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); *Parrott v. Cheney,* 748 F.Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990), *see also, King v. Rumsfeld,* 328 F.3d 145, fn. 5 (4th Cir.2003) ("King's firing came two months and two weeks following Carlson's receipt of notice that King had filed a complaint ... is sufficiently long as to weaken significantly the inference of causation between the two events.")

In short, Plaintiff is unable to establish a *prima facie* case because she has no evidence of causation other than the proximity of the events, which in this case, is not "very close." Thus, judgment should be entered for the defendant on the retaliation claim.

### Defendant's Proffered Reason for the Termination

Even if the court were to assume that the Plaintiff has made out a *prima facie* case of discrimination on the basis of race or retaliation under *McDonnell Douglas,*

the defendant has proffered legitimate, nondiscriminatory reasons for its decision and the plaintiff has not presented evidence that genuinely and materially undermines the credibility of the given reasons.

The defendant asserts it took the action against the plaintiff "for cause". The defendant properly argued that the plaintiff was not performing her job duties at a level that met her employer's legitimate expectations. Plaintiff cannot show that accumulating multiple serious disciplinary infractions over a two year period met her employer's legitimate expectations. Following these infractions the plaintiff broke the rules again by not immediately reporting an accident and by not performing her work in a safe manner. In light of her prior disciplinary record, and in compliance with the progressive disciplinary scheme, she was terminated.

When the termination was upheld in arbitration between the Postal Service and the NALC, the arbitrator concluded that Plaintiff had indeed failed to report and failed to follow rules. Further and most importantly here, the arbitrator found,

> Grievant's disciplinary history contains prior suspensions for disobeying orders and failing to observe postal safety rules and regulations. On April 9, 2004, the grievant was issued a seven-day suspension for failing to obey a direct order and failing to observe safety rules and regulations while on her route delivering mail. The safety violations included driving with her LLV door open, leaving the vehicle unsecured, and not setting the handbrake. On April 21, 2004, the grievant was issued a fourteen day suspension for failing to follow instructions, unacceptable conduct and failing to safely perform the duties of her position. On February 23, 2005, the grievant received a thirty day suspension for unacceptable conduct due to her interaction with a customer on her route.

> ... The record also establishes that further discipline less than discharge would not result in correcting or improving grievant's behavior. For each of the foregoing reasons, the grievance is denied.

(Def. ex 20).

Plaintiff has not forecast relevant evidence from which a reasonable jury could conclude that Defendant's articulated legitimate reasons for her removal were mere pretexts for illegal race and reprisal discrimination. The claims should be dismissed on this basis also.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment on all causes of action be granted and this matter ended.