UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1847

MATTHEW PASCUAL,

Plaintiff - Appellant,

versus

LOWE'S HOME CENTERS, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, District
Judge.  (CA-04-1440-1)

Argued:  May 24, 2006                 Decided:  August 2, 2006

Before KING and SHEDD, Circuit Judges, and Joseph R. GOODWIN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Todd Francis Sanders, SANDERS & KISSLER, Leesburg,
Virginia, for Appellant.  Charles Randolph Sullivan, HUNTON &
WILLIAMS, Richmond, Virginia, for Appellee.  **ON BRIEF:** Douglas R.
Kay, BRIGLIA & HUNDLEY, P.C., Fairfax, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Matthew Pascual appeals the district court's order granting summary judgment to his former employer, Lowe's Home Centers, Inc., on his Title VII retaliation claim. We affirm.

## I.

Pascual began working for Lowe's in September 2002 as an assistant manager in Sterling, Virginia. In February 2003, Lowe's promoted him to sales manager where he was responsible for recruiting, training, and managing sales specialists and overseeing commercial, installed, and special order sales. When Lowe's promoted Pascual, it also hired Steve Rosko as the store manager. Rosko supervised Pascual.

Beginning in January 2003, Eileen Duley and Chauncey Kopp, two of Pascual's coworkers, began calling Pascual "Pretty Pants" and "Pretty." Other employees also had nicknames, including Big C, Kenny, Big Game, Captain America, and Rafy. Pascual at first laughed at the nicknames, but in February 2003 he asked Rosko to address the name-calling. Pascual claims he talked with Rosko several times about the nicknames but that the name-calling continued. Pascual did not explain to Rosko that he thought the nicknames constituted sexual harassment.[1]

---

[1]Pascual also claims Duley "physically groped" him by pinching his nipples and grabbing his buttocks one evening after work at the Bongo and Billiards, a local bar. Pascual does not allege this

2

Pascual claims that during this same period Lowe's required him to cover an excessive number of manager-on-duty ("MOD") shifts. Lowe's claims all managers were required to cover MOD shifts.

On May 14, 2003, Rosko issued Pascual a written warning for poor job performance. The warning stated that Pascual failed to complete payment documentation, a commercial sales action plan presentation, documentation of underperforming sales specialists, and repairs to the displays in the showroom. Pascual signed the warning, agreed to resolve the issues stated in the warning by specified dates, and agreed to "work towards having better performance." J.A. 937–38. Pascual later testified he did not take the warning "as seriously as maybe [he] should have." Id. at 275.

The record contains an additional evaluation dated May 20, 2003, known as the "Matt sales manager walk" ("manager walk"). This document, signed by Rosko, sets forth a number of additional job deficiencies. The parties dispute the validity of the manager walk document.

On May 22, 2003, Pascual sent the following email message to Krishna Desai, the Sterling store's human resources manager:

> It has come to my attention that there have been allegations of sexual harassment on several levels here at the store. I am concerned that we as a management team aren't taking them seriously enough and in many

conduct occurred during a work event or that he reported the conduct to management.

cases are condoning or participating in such action.  As a measure of my concern for this and in order to preserve the friendly work environment of the store, I recommend that we review policy and procedure as a group.  I know that being referred to as "Pretty Pants" or "pretty" can be construed as offensive and I think that management should refrain from using them when referring to other managers.  We are a professional organization and we need not undermine people's authority or speak of personal appearances when referring to another manager, especially in front of subordinates.  Just concerned if this type of behavior goes unchecked, it will mushroom into something bad.

Id. at 756.  Pascual claims the "sexual harassment" he complained of referred to the name-calling and the harassment of Nicole Kleean, another manager in the store, who had reported harassing conduct to a Lowe's official on May 4, 2003.[2]  On May 23, Bill Irving, the regional human resources director, met with Pascual. Pascual later testified that he discussed Kleean's harassment during the meeting.

On May 30, 2003, Lowe's required the store's management staff to attend sexual harassment training in which, among other topics, the use of nicknames was addressed.  Pascual acknowledged that Lowe's response to his email message was appropriate and that the use of nicknames ceased after the training.

On August 9, 2003, Lowe's issued Pascual a "Final Notice," which stated:

---

[2]Lowe's transferred Kleean's alleged harasser to another store during the investigation of Kleean's harassment and terminated the alleged harasser's employment on May 25, 2003.

4

During the past 45 days Matt performance has not met the requirements set forth in his last documentation on 5/14/2003 and has declined furthermore. Examples are tardiness on 7/27 & 7/28, not working his required time during the week of 7/26/2003. Not performing required MOD responsibilities such as 7/25/2003 no unlock report or MR's Performed. Very poor compliance on safety walks during his MOD shifts. Not attending required training on 8/7/2003 commercial sale action plan not executed, required training for regional program not being completed, and nine specialist vacancies in his dept.

Id. at 770. The Final Notice also stated, "[a]ny violation or decline in performance or failure to complete [the work plan] by 8/22/2003 will result in termination." Id. Pascual refused to discuss, read, or sign the final notice. He testified that he responded to the Final Notice in this manner because of his store's strong sales performance.

On September 4, 2003, Lowe's terminated Pascual's employment. The termination document stated:

During the previous four months Matt has been documented on his job performance. As of August 4th issues are outstanding, Matt did not attend 2:00 teleconference on August 4th, left work early on August 3rd in the middle of a staff meeting, previous seven days no refund verification. Commercial sales action plan still not being executed. No safety walks performed on Matt's opening or closing shift. Regional training still not being executed. Six specialist positions open with no active recruiting plan in place. Matt still is not executing his Sales Manager best practices and job description to the required level of execution.

Id. at 771. No record evidence contradicts the content of the termination document.

On October 13, 2003, Pascual filed an EEOC complaint. The EEOC dismissed his charge and issued a right to sue letter.

5

Pascual subsequently filed a civil action alleging claims of Title VII retaliation.  The district court granted summary judgment in favor of Lowe's because Pascual did not engage in a protected activity, he failed to prove a causal relationship between a protected activity and the termination of his employment, and he failed to provide any substantiated evidence of pretext.  Pascual appealed the district court's decision.  We affirm because no factual issue exists as to whether Lowe's termination of Pascual's employment was causally connected to a protected activity.


## II.

We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party.  Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001).  A moving party is entitled to summary judgment if the evidence shows no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).


## III.

Title VII's retaliation provision prohibits an employer from "discriminating against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3(a) (2000).  We use a variation of the McDonnell Douglas burden-shifting test to evaluate retaliation claims.  See

6

<u>Munday v. Waste Mgmt. of N. Am., Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997). The plaintiff first must establish a prima facie case of retaliation by showing: (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action.[3] <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 258 (4th Cir. 1998). Once a plaintiff has established a prima facie case of retaliation, an employer may rebut this initial showing by articulating a nondiscriminatory reason for the adverse employment action. <u>Id.</u> If an employer articulates such a reason, the burden shifts back to the plaintiff to show that the explanation for the action was a pretext for intentional retaliation. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147-48 (2000).

## IV.

Pascual claims his email message to human resources, his interview with human resources personnel, and his complaints to Rosko about being called "Pretty" and "Pretty Pants" constituted protected activities. He further contends the termination of his

---

[3]In <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 2006 WL 1698953 (June 22, 2006), the Supreme Court recently resolved a circuit split over the scope of employer actions considered to "discriminate against" an employee. Because Lowe's concedes Pascual suffered an "adverse employment action," we need not examine the implications of <u>Burlington Northern</u> in this case.

employment, which Lowe's concedes was an adverse employment action, was causally connected to those activities.[4]  Even assuming Pascual's actions constituted protected activities, we hold the district court properly granted summary judgment because Pascual failed to provide sufficient evidence of a causal link between the claimed protected activities and Lowe's decision to terminate his employment.

In support of his claim that a causal connection exists, Pascual relies on:  (1) claims of Rosko's dishonesty; (2) high sales volume; and (3) the temporal proximity between the claimed protected activities and his termination.

We first examine Pascual's claim related to the store's sales performance.  Although Pascual offers evidence of the store's strong sales performance, the job deficiencies listed on Pascual's written warnings include issues related to documentation, safety, and staffing that are largely unrelated to the store's financial success.  We therefore find that evidence of the store's sales volume is unrelated to Lowe's criticisms of Pascual's job

---

[4]Pascual also asserts that Rosko retaliated against him by assigning him additional MOD shifts.  Other than conclusory statements, however, Pascual failed to present any evidence showing he was assigned a disproportionate number of MOD shifts.  We therefore find Pascual has not satisfied his evidentiary burden on this issue.  See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (finding that an employee's unsubstantiated allegations and bald assertions fail to show discrimination).

performance and does not diminish the evidentiary value of the written warnings.

Pascual's argument that Rosko's alleged dishonesty undermines the reliability of the written warnings is also unavailing. Pascual claims Rosko was dishonest, and therefore, his written warnings are unreliable and should not be considered at the summary judgment stage. Pascual, however, failed to provide *any* evidence, other than his own unsubstantiated allegations, that shows the written warnings were inaccurate. See Mackey v. Shalala, 360 F.3d 463, 469–70 (4th Cir. 2004) (finding a plaintiff's self-serving opinions are insufficient to establish a prima facie case of discrimination). We therefore find that Pascual's claims of Rosko's dishonesty do not render the written warnings unreliable.

Thus, Pascual's only evidence of a causal link is the temporal proximity of the events at issue. "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). Generally speaking, however, the passage of time alone cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam). In this case, at least three to four

9

months separated the termination of Pascual's employment and the claimed protected activities. We find that this time period is too long to establish a causal connection by temporal proximity alone.

V.

Because Pascual failed to meet the evidentiary burden required to show a causal connection, he did not establish a prima facie case of retaliation. Accordingly, the district court properly granted summary judgment to Lowe's.

AFFIRMED