**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1215

CHAZZ J. ROBERTS,

Plaintiff – Appellant,

v.

GLENN INDUSTRIAL GROUP, INC.; GLENN UNDERWATER SERVICES, INC.; GLENN UNDERWATER SERVICES, LLC,

Defendants – Appellees.

-------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Amicus Supporting Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:17-cv-00745-GCM)

Argued: December 10, 2020                    Decided: May 21, 2021

Before GREGORY, Chief Judge, AGEE, and KEENAN, Circuit Judges.

Affirmed in part, vacated in part by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Agee and Judge Keenan concurred.

**ARGUED:** Geraldine Sumter, FERGUSON CHAMBER & SUMTER, P.A., Charlotte, North Carolina, for Appellant. Jeremy Daniel Horowitz, UNITED STATES EQUAL

EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.  Frederick Martin Thurman, Jr., SHUMAKER LOOP & KENDRICK, PLLC, Charlotte, North Carolina, for Appellee. **ON BRIEF:** James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, Sydney A.R. Foster, Assistant General Counsel, Office of General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

---

GREGORY, Chief Judge:

This appeal arises out of a former employee's allegations of same-sex sexual harassment by his supervisor and retaliatory termination. Chazz Roberts ("Roberts") appeals from the district court's entry of summary judgment in favor of his former employer, Glenn Industrial Group, Inc. ("Glenn Industrial" or "the company"), on claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. We affirm the district court's summary judgment as to Roberts' retaliation claim, but vacate summary judgment as to his sexual harassment claim and remand for further proceedings.

I.

In reviewing the district court's award of summary judgment, we state the facts and draw all reasonable inferences in the light most favorable to Roberts, the nonmoving party. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). Glenn Industrial is a Charlotte, North Carolina-based corporation that provides underwater inspection and repair services to utility companies. Because underwater inspections and repairs are high-risk activities, Glenn Industrial prioritizes workplace safety. All of Glenn Industrial's non-office employees are male.

In July 2015, Glenn Industrial hired Appellant Roberts as a "dive tender," or diver's assistant. At the time, Roberts received and signed for a copy of the company handbook, which included a "no harassment" policy. The policy required that all complaints of sexual harassment be reported to the company's CEO, Richard Glenn ("Glenn").

3

From the beginning of Roberts' employment, his supervisor, Andrew Rhyner ("Rhyner") repeatedly called Roberts "gay" and made sexually explicit and derogatory remarks towards him, including statements referring to him as a "fucking retard" or having "retard strength," and asking him "how much dicks [he] would suck for money." J.A. 48–49. Roberts stated that "pretty much every time I'm around Andrew I was getting harassed by him." J.A. 41. Rhyner also physically assaulted Roberts at least twice. On one occasion, Rhyner slapped Roberts' safety glasses off his face, pushed him, and put him in a chokehold. On another occasion, Rhyner slapped Roberts, knocking his helmet off his head, when he, in Rhyner's estimation, "said something stupid." J.A. 53. Roberts complained to Rhyner's supervisor, Bruce Evans, at least four times over the course of his employment. Evans told Roberts to "suck it up." J.A. 48. Roberts also complained to another supervisor, Brandon Neal, who witnessed some of Rhyner's conduct.

Finally, Roberts voiced his concerns to Ana Glenn ("Mrs. Glenn"), Vice President of Glenn Industrial, the company's Human Resources Manager, and wife of the company's CEO. His complaints, made in November 2015 and January 2016, described Rhyner's conduct in detail. Roberts did not, however, complain directly to Glenn. Rhyner was not disciplined or counseled, and his harassment of Roberts continued.

According to Roberts, Glenn Industrial often failed to address workplace safety issues. He reported a variety of safety violations related to the lack of necessary safety equipment and noted that the company failed to report safety issues as required.

Roberts was involved in a work-related accident on March 16, 2016 at a job site in Eden, North Carolina. A piece of equipment caught fire while Roberts was fueling it and

4

he suffered burns to his hands and face. Roberts contends he was burned despite wearing his safety gloves, but Glenn attests that he was told Roberts was not wearing them at the time of the incident. After receiving first aid, Roberts drove himself back to Charlotte where he met with Glenn. Glenn explained to Roberts that what he had done was very unsafe and that Glenn would have to release him if he had another safety incident. Roberts did not tell Glenn he was being mistreated, harassed, or discriminated against while at work. Roberts returned to the job site in Eden the next day.

On April 11, 2016, Roberts was on an assignment in Eden when Neal, the job-site supervisor, removed him from the site. According to Neal, Roberts was "disruptive and acting erratic all morning," "appeared confused," "was working in the wrong area," and was wearing earbuds, which was strictly forbidden. J.A. 214. Roberts was later found in a fall hazard area, "swaying and unsure of his footing, without his hardhat, safety glasses, or gloves, and without [his] fall protection connected." J.A. 214-15. Neal sent Roberts back to their hotel after noting that his eyes were "glassed over" and his speech was slurred. J.A. 215.

Upon learning of Roberts' removal from the job site, Glenn directed Glenn Industrial's safety manager, Thomas Grice, to return Roberts to Charlotte. Grice described Roberts as incoherent, with slurred speech and "dazed" eyes. J.A. 215, 326-27. On the way, they stopped in Greensboro, where Roberts was administered a drug test. He ultimately tested negative for drugs. Glenn met with Roberts later that day. Roberts denied using drugs or being intoxicated at work. He again made no mention that he was being mistreated, harassed, or discriminated against at work. According to Roberts, Glenn told

5

him that he was not fit for duty and directed him to take a few days off, and then never called him back to work. Glenn contends that he terminated Roberts based on the two safety incidents, particularly the second one, which he considered to be very serious.

Roberts filed a Charge of Discrimination with the EEOC in June 2016 alleging sex discrimination and retaliation.[1] The EEOC Charge stated that his supervisor called him "gay," made "numerous sexually explicit negative comments toward" him, and assaulted him. *Id*. Following an investigation, the EEOC dismissed the Charge and issued Roberts a "right-to-sue" letter.

Roberts sued Glenn Industrial in February 2018, alleging, among other claims, same-sex sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"). The district court, relying on *Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998), rejected Roberts' claim that his supervisor harassed him on the basis of sex and granted summary judgment to the employer. The court found that *Oncale* identified three situations that support a claim of same-sex sexual harassment based on gender, but none of those "*Oncale* situations" applied in Roberts' case. J.A. 447.

Further, the court found that Roberts had not established a claim of retaliation under Title VII because he did not proffer evidence that Glenn, the decisionmaker, was aware of

---

[1] According to Glenn, he first learned of Roberts' sexual harassment claims when he received the EEOC Charge. J.A. 216. In response to the Charge, Glenn claimed that Roberts received multiple safety warnings for not wearing personal protective equipment that were "placed on file by his supervisors," J.A. 303, but there is no formal documentation of safety violations in Roberts' file.

his sexual harassment complaints before he fired him. The court held that even if Glenn had been aware of Roberts' protected activity, a "'months'[-]long delay between protected conduct and an adverse action is too long" to support a causal relationship. J.A. 448. Finally, the district court held that Glenn Industrial set forth a legitimate non-retaliatory reason for his termination—his violation of company safety policies. Thus, Roberts could not prove that his alleged protected activity was the "but-for" cause of the adverse employment action. This appeal of Roberts' Title VII claims followed.[2]

Roberts appeals the district court's decision to grant summary judgment to Glenn Industrial. He contends the court erred in concluding that Roberts (1) could not establish a claim of same-sex sexual harassment where he failed to prove his harasser identifies as gay; and (2) could not prove a claim of retaliation without evidence that the decisionmaker had actual knowledge of Roberts' protected activity.

## II.

This Court reviews an order of summary judgment de novo. *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 716 (4th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material act and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp.*

---

[2] Roberts also sued for violations of the overtime provisions of the Fair Labor Standards Act and the North Carolina Wage and Hour Act, and for intentional infliction of emotional distress pursuant to North Carolina common law. Roberts did not pursue his overtime claims and has not appealed the district court's dismissal of his other state law claim.

*v. Catrett*, 477 U.S. 317, 322–23 (1986).  The court "consider[s] the evidence and all inferences fairly drawn from the evidence in the light most favorable to" the non-moving party. *Carnell Constr. Corp.*, 745 F.3d at 716.

Addressing each of Roberts' arguments, we turn first to his claim that Glenn Industrial is liable under Title VII for harassment his supervisor inflicted upon him because of his sex. He contends he established a *prima facie* case of sexual harassment based on a hostile work environment, and the district court misapplied the Supreme Court's decision in *Oncale* when it failed to recognize his claim on the ground that his harasser did not identify as gay.

A.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted).  To establish a *prima facie* case of sexual harassment based on a hostile work environment, a plaintiff must prove (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).  "Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557–58 (D. Md. 2006)

8

(citing *Scott v. Ameritex Yarn*, 72 F. Supp. 2d 587, 591 (D.S.C. 1999)). "Establishing the third element requires that the plaintiff show that the work environment was not only subjectively hostile, but also objectively so." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). To determine whether an environment is hostile, the Court must look at all the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. And as to the fourth element, an employer may be found vicariously liable to an employee when a supervisor "with immediate (or successively higher) authority" over him creates an "actionable hostile environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). The employer "may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 335 (4th Cir. 2011). "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003). Once the employer has notice, it must respond with remedial action reasonably calculated to stop the harassment. *See Amirmokri v. Balt. Gas & Elec.*, 60 F.3d 1126, 1131–32 (4th Cir. 1995).

## B.

Roberts argues that he has proved a *prima facie* case of sexual harassment based on a hostile work environment due to Rhyner's sufficiently severe or pervasive unwelcome

9

conduct based on Roberts' sex. *See Okoli*, 648 F.3d at 220. The district court's decision addressed only a single prong of his *prima face* case—whether the harassment was "based on sex." Roberts contends that the district court misconstrued and misapplied the Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, when it rejected Roberts' claim that his supervisor harassed him on the basis of sex in violation of Title VII. We agree.

In *Oncale*, the Supreme Court held that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." 523 U.S. at 79. The Court then identified three evidentiary routes by which a plaintiff could prove that he was the victim of same-sex harassment based on his sex: (1) when there is "credible evidence that the harasser [is] homosexual" and the harassing conduct involves "explicit or implicit proposals of sexual activity;" (2) when the "sex-specific and derogatory terms" of the harassment indicate "general hostility to the presence of [the victim's sex] in the workplace"; and (3) when comparative evidence shows that the harasser treated members of one sex worse than members of the other sex in a "mixed-sex workplace." *Id*. at 80–81. "Whatever evidentiary route the plaintiff chooses to follow . . . he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discriminat[ion] . . . because of . . . sex.'" *Id*. at 81.

Here, the district court found that the second and third "*Oncale* situations" were not applicable, as there was "no evidence that Rhyner was motivated by a general hostility towards men in the workplace, and Glenn's worksites are not mixed-sex workplaces—they

10

are all male—so there is no possibility of comparative evidence." J.A. 447. As to the first "Oncale situation," the district court concluded that *Oncale* "requires not just evidence, but 'credible evidence,'" that the offending supervisor is gay," but "[t]he only evidence in the record is that Rhyner is straight," and "there is no evidence that Rhyner made 'explicit or implicit proposals of sexual activity.'" J.A. 447. In the district court's view, none of Rhyner's comments could be characterized as such, and so did not establish discrimination based on sex. The court also held that Rhyner's physical assaults were "not of a sexual nature." J.A. 447. Finding that none of the "*Oncale* situations" applied in Roberts' case, the district court awarded summary judgment in favor of Glenn Industrial on the sexual harassment claim. J.A. 447. In so doing, the district court treated the three *Oncale* examples as the only routes by which a plaintiff could prove a sexual harassment claim.

C.

The district court erred in its interpretation of *Oncale*. Nothing in *Oncale* indicates the Supreme Court intended the three examples it cited to be the only ways to prove that same-sex sexual harassment is sex-based discrimination. This conclusion—that the three circumstances the Supreme Court described are not exclusive—is best illustrated by examining the facts underlying Oncale's claim.

Oncale, a male oil platform roustabout, was repeatedly and "forcibly subjected to sex-related, humiliating actions" by male supervisors and a co-worker "in the presence of the rest of the crew," was "physically assaulted . . . in a sexual manner," and was threatened with rape. *Oncale*, 523 U.S. at 77. Notably, Oncale's sexual harassment claim did not fall under any of the three examples the Supreme Court cited as ways a plaintiff could establish

11

that same-sex harassment was "based on sex." The evidence did not indicate the harassers identified as gay, were hostile to the presence of other men on the platform, or that they treated women differently (because there were no women on the platform). *See id*. at 80–81. Yet the Supreme Court reversed the grant of summary judgment for the employer and remanded the case to permit Oncale to argue that the same-sex harassment he suffered constituted discrimination "because of . . . sex." *Id*. at 81–82.

D.

Since *Oncale*, this Court has not addressed how a plaintiff may prove a same-sex sexual harassment claim in a published opinion. Here, the district court relied on an unpublished district court decision, *McDowell v. Nucor Building Systems*, No. 3:10-cv-172, 2012 WL 714632 (D.S.C. Feb. 29, 2012), *aff'd*, 475 F. App'x 462 (4th Cir. 2012). But *McDowell* does not compel the conclusion the district court reached. The *McDowell* court did not hold that proof of same-sex harassment is limited to the three routes described in *Oncale*. The court noted the three examples and that the magistrate judge appeared to rely on the first one. *Id.* at *6. It then affirmed the magistrate judge's determination that the plaintiff's evidence of the harasser's homosexuality, or that he proposed sexual activity, was insufficient to support a claim of same-sex sexual harassment.[3] *Id.*

More recently, in *Dooley v. Capstone Logistics, LLC*, 764 F. App'x 389 (4th Cir. 2019), another unpublished, per curiam opinion, this Court appears to suggest that the *Oncale* examples are the exclusive means to establish that same-sex harassment was based

---

[3] This Court affirmed the district court, but in an unpublished, nonbinding decision that did not address this issue.

12

on sex. The Court identified the three *Oncale* examples, and then held that the plaintiff had not produced evidence beyond mere speculation that the harasser was homosexual, or that he treated the plaintiff harshly because he was hostile to men, or that the harasser "had any interactions with women in a mixed-sex workplace." *Id.* at 390.

But other circuits have considered the question presented here and stated conclusively that *Oncale*'s three examples were not intended to serve as an exhaustive list of the ways to prove that same-sex harassment was based on sex.[4] These courts have noted that the Supreme Court used the language "for example" and "[w]hatever evidentiary route the plaintiff chooses to follow," to indicate the list is not exclusive. *See, e.g.*, *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 455–56 (5th Cir. 2013) (en banc) (citing *Oncale*, 523 U.S. at 80–81). Further they have acknowledged that "nothing in *Oncale* overturns or otherwise upsets the Court's holding in *Price Waterhouse* [*v. Hopkins*, 490 U.S. 228 (1989)

---

[4] *See, e.g.*, *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 262–63; 264 (3d Cir. 2001) (recognizing potential cause of action when same sex harassment is based on failure to conform to sex stereotypes, and noting that "other ways in which to prove that harassment occurred because of sex may be available"); *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 455–56 (5th Cir. 2013) (en banc) ("[E]very circuit to squarely consider the issue has held that the *Oncale* categories are illustrative, not exhaustive, in nature"); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999) (finding that *Oncale*'s examples were illustrative, not exhaustive); *Pedroza v. Cintas Corp.*, 397 F.3d 1063, 1068 (8th Cir. 2005) (*Oncale* sets forth non-exhaustive list including three possible evidentiary routes to show harassment was based on sex); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) (*Oncale*'s three evidentiary routes not exhaustive). *See also Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763–66 (6th Cir. 2006) (acknowledged the availability of another form of proof based on sex stereotyping); *but see Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467–68 (6th Cir. 2012) (court treated the *Oncale* categories as exclusive, but did not expressly consider the issue because the plaintiff's claim fell into *Oncale*'s first category). To the extent that *Wasek* is inconsistent with *Vickers*, the earlier case binds that court. *See Boh Bros.*, 731 F.3d at 455 n.6.

13

that] a plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping." *Id*. at 456. We adopt this well-reasoned view and recognize that additional forms of proof beyond those identified in *Oncale* are available to plaintiffs to demonstrate that the same-sex harassment they suffered was based on sex, including proof of discrimination based on a plaintiff's failure to conform to sex stereotypes. In so doing, we reject Glenn Industrial's arguments that Roberts' claim is limited to the evidentiary routes described in *Oncale*, and that Roberts cannot show that the harassment was based on sex because Rhyner is not gay and did not make explicit or implicit proposals of sexual activity.

Glenn Industrial also attempts to reframe Roberts' claim that he was discriminated against because of his sex as a claim he was discriminated against because of his perceived sexual orientation. This argument, however, is based on a belief that Title VII affords Roberts no protection for such a claim. *See Hopkins v. Balt. Gas & Elec. Co*., 77 F.3d 745, 751–52 (4th Cir. 1996) ("Title VII does not prohibit conduct based on the employee's sexual orientation."). But this Court's decision in *Hopkins* presents no barrier to Roberts' claim. In *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court held that discrimination based on sexual orientation or transgender status violatesTitle VII "because to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." *Id*. at 1742. The Court also applied its reasoning broadly to employees who fail to conform to traditional sex stereotypes. *Id*. at 1741–43 (explaining that an employer who fires a man for being "insufficiently masculine" does so "because of sex," and where an employer intentionally penalizes a man for traits

14

or actions it tolerates in a female, "the employee's sex plays an unmistakable and impermissible role in the discharge decision").

Thus, we follow the majority of our sister circuits in concluding that *Oncale* does not limit the evidentiary routes by which a plaintiff may prove same-sex sexual harassment to those the Court described. Moreover, the Supreme Court's holding in *Bostock* makes clear that a plaintiff may prove that same-sex harassment is based on sex where the plaintiff was perceived as not conforming to traditional male stereotypes. *See id*. Thus, the district court erred in granting summary judgment to Glenn Industrial on Roberts' same-sex sexual harassment claim.

E.

Further, the district court erred by disregarding entirely the evidence of Rhyner's physical assaults on Roberts because they were "not of a sexual nature." J.A. 447. This Court has held that "[a]ctionable discrimination includes conduct 'because of' the victim's gender, which is broader than conduct of a 'sexual nature.'" *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 n.16 (4th Cir. 2000) (citing *Oncale*, 523 U.S. at 79–81); *see also Smith v. Sheahan*, 189 F.3d 529, 533–34 (7th Cir. 1999) (physical assault on coworker resulting in injured wrist was evidence of hostile environment based on sex). While Rhyner's actions in choking and slapping Roberts were not overtly sexual, there is no requirement that they be so to be considered as evidence in support of a claim of a hostile environment based on sex. The district court erred in failing to examine more broadly whether Rhyner's physical assaults on Roberts were part of a pattern of objectionable, sex-based discriminatory behavior.

F.

In light of the district court's errors, we vacate its entry of summary judgment as to Roberts' sexual harassment claim and remand for further proceedings. On remand, the district court must reexamine, based on a proper application of *Oncale* and with due consideration given to the evidence of Rhyner's physical assaults, whether Roberts established that the harassment he suffered was based on his sex. Further, the district court must examine whether the remaining elements of a *prima facie* case of sexual harassment have been satisfied as well. *See Okoli*, 648 F.3d at 220. We therefore remand for the district court to determine whether the record could permit a reasonable jury to conclude not only that Roberts was subjected to conduct based on his sex, but that the conduct was also unwelcome, sufficiently severe or pervasive to alter the conditions of his employment and create a hostile work environment, and imputable to Glenn Industrial. *See Bostock*, 140 S. Ct. 1741–43; *Oncale*, 523 U.S. at 79; *Harris*, 510 U.S. at 23; *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807–08; *Bonds*, 629 F.3d at 385 (4th Cir. 2011); *Hoyle*, 650 F.3d at 335; *Ocheltree*, 335 F.3d at 334; *Amirmokri*, 60 F.3d at 1131–32; *Albero*, 422 F. Supp. 2d at 557–58.

III.

Next, we turn to Roberts' claim that Glenn fired him in retaliation for his complaints of sexual harassment. We find that Roberts has failed to establish a *prima facie* case of retaliatory termination. He has not presented sufficient evidence to demonstrate a causal relationship between his protected activity and his employer's adverse action. Glenn did

16

not have actual knowledge of Roberts' complaints of sexual harassment when he terminated him, and there was a lack of temporal proximity between Roberts' last complaint and his termination.

A.

Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination. *Foster v. Univ. of Md. – Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing 42 U.S.C. §§ 200e-2(a)(1), 2000e-3(a)). A plaintiff may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework. *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Johnson v. United Parcel Serv., Inc.*, No. 20-1313, 2021 WL 31914, at *1 (4th Cir. Jan. 5, 2021) (citing *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (plaintiff may demonstrate retaliation through either direct evidence of retaliation or through the *McDonnell Douglas* framework)).

To prevail under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case by showing that he "engaged in protected activity," that his employer "took an adverse action against [him]," and that "a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250 (internal citation omitted); *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). After a *prima facie* case is made, the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason. *Foster*, 787 F.3d at 250. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by

17

demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination. *Id*.

B.

Roberts does not allege any direct evidence of retaliation; he relies instead on the application of the *McDonnell Douglas* framework to prove his claim. He has satisfied the first and second prongs of a *prima facie* case of retaliation. "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). Complaints raised through internal company procedures are recognized as protected activity. Roberts certainly engaged in protected activity when he complained of the harassment—first to Rhyner's supervisor, Brandon Neal, then to another supervisor, Bruce Evans, and ultimately to Mrs. Glenn in her role as the company's manager of Human Resources.

Further, Roberts' termination was an adverse employment action. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 601 (D. Md. 2018) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). "Discharge" from employment is one form of adverse employment action. *See id.* at 601 (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)); *see also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656–57 (4th Cir. 1998) (recognizing discharge is an adverse employment action). There is no dispute that Glenn

18

fired Roberts approximately three months after he last complained about the alleged mistreatment.

C.

Glenn Industrial contends that Roberts cannot establish the third element of a *prima facie* case of retaliation, which requires a showing that "a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250, 253. Stated differently, a plaintiff must show that his employer "took the adverse action *because* of the protected activity." *Bryant v. Aiken Regional Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir.2001)) (emphasis added).

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Johnson*, 2021 WL 31914, at *2. A plaintiff may establish the existence of facts that "suggest[] that the adverse action occurred because of the protected activity." *Id*. (citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that "relevant evidence may be used to establish causation")). A plaintiff may also establish that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action. *See id.*

Glenn Industrial argues that Roberts cannot satisfy the causation prong of a *prima facie* case of retaliation for two reasons. First, it argues that no causal connection between the protected activity and the adverse action can be established where Glenn, as sole

19

decisionmaker, fired Roberts without actual knowledge of the harassment or of any complaints of harassment made to the company's employees. Second, Glenn Industrial argues that Roberts' termination occurred too long after his last complaint—approximately three months—to raise a causal inference. We agree on both grounds and conclude that the district court did not err in finding that Roberts failed to establish the requisite causal connection between his protected activity and the adverse action taken against him.

1.

Roberts disagrees on both points. He first argues that constructive knowledge of protected activity based on complaints made to supervisory employees is enough to support a causal link between that activity and a decisionmaker's adverse employment action. He insists Glenn is liable for retaliation despite his denial that he had any prior knowledge of the alleged harassment or the complaints. Glenn Industrial, Roberts contends, was repeatedly "put on notice" of the sexual harassment through its employees but failed to remediate it, and thus, as CEO of the company, and as the husband of the company's Human Resources manager to whom Roberts complained, Glenn had constructive knowledge of the harassment and Glenn Industrial may be held liable for retaliatory termination.

Glenn Industrial does not deny that Roberts reported Rhyner's harassing conduct on multiple occasions to three different supervisory employees, or that Roberts was fired. It contends, and Roberts concedes, that Roberts never told Glenn directly of the harassment despite having met with him personally on two occasions. Further, Glenn asserts that he

20

did not learn about the harassment or the complaints until months after Roberts' termination when he received notice of the EEOC Charge.

In this Circuit, we have consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim. To establish a causal relationship between the protected activity and the termination, a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred. *Baqir*, 434 F.3d at 748; *see also Johnson*, 2021 WL 31914, at *2 (citing *Dowe*, 145 F.3d at 657 (plaintiff cannot establish the causation element of her *prima facie* case where the relevant decisionmaker was unaware of her protected activity); *Landino*, 520 F. App'x at 198 (no causal connection established where plaintiff failed to present evidence that any of his supervisors responsible for the alleged discrimination knew he was claiming discrimination based on a protected status)).

In *Dowe*, this Court held

> To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case.

145 F.3d at 657 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (dismissing claim because no evidence that relevant decisionmaker knew plaintiff had complained of discrimination); *Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (dismissing claim because relevant decisionmaker was unaware plaintiff had filed an EEOC complaint); *Talley v. U.S. Postal Serv.*, 720 F.2d 505,

21

508 (8th Cir.1983) (dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in a protected activity)).

Thus, where a relevant decisionmaker is unaware of any prior complaints, a plaintiff "cannot establish the necessary causal connection between [his] filing a complaint . . . and [his] termination. It necessarily follows, therefore, that [the plaintiff] cannot establish a *prima facie* case of retaliation." *Id.* In reaching this conclusion in *Dowe* and in other cases, our Court's analysis has centered on what the relevant decisionmaker knew at the time of the adverse employment action, not on any knowledge other employees may have had that could be imputed to the employer.

In support of his argument that he need only establish constructive knowledge of the protected activity, Roberts relies on a series of Fourth Circuit Title VII cases which he contends stand for the proposition that a defendant is liable for retaliation if it has actual *or constructive* knowledge of the harassment. *See Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014)*; see also Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006) (employer liable for co-worker's harassing conduct where employer "was negligent in failing, after actual *or constructive* knowledge, to take prompt and adequate action to stop it"); *Ocheltree, Inc.*, 335 F.3d at 334 (knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment). Based on these cases, Roberts argues that Glenn Industrial may be held liable for retaliation even if Glenn did not receive Roberts' sexual harassment complaints personally. In Roberts' view, his retaliation claim should proceed under the theory that Glenn, as CEO, had constructive

22

knowledge of Roberts' complaints when he terminated his employment because the repeated complaints to his supervisory employees put the company on notice of the harassment.

All of these cases, however, miss the legal mark. While each adjudicates one or more Title VII harassment claims, only one of them, *Strothers v. City of Laurel*, 895 F.3d at 317, also involves a Title VII *retaliation* claim. In relying upon these cases, Roberts conflates the requirements to prove the fourth element of a Title VII harassment claim, which requires a finding that the harassment was "imputable to the employer,"[5] with what is required to prove the causation element of a *prima facie* case of a Title VII retaliation claim. Thus, the cited authority does not, as Roberts claims, establish that a Title VII retaliation defendant may be held liable if it has constructive knowledge of alleged harassment.

Further, as both a factual and procedural matter, this Court's decision in *Strothers* is not instructive here. In that case, the Court considered whether the decisionmaker understood or should have understood the plaintiff's complaint to be a complaint of racial discrimination prohibited by Title VII. *Id*. at 336. Whether the decisionmaker had knowledge of the plaintiff's harassment complaints was simply not at issue. In fact, the decisionmaker was fully aware of plaintiff's complaints; he had engaged in multiple conversations with the plaintiff regarding the harassment and had received from her an

---

[5] *See Freeman*, 750 F.3d at 420; *Howard*, 446 F.3d at 565; *Ocheltree*, 335 F.3d at 331.

informal memorandum documenting the harasser's behavior.[6] When the plaintiff requested the necessary forms to formalize her complaint, the decisionmaker fired her the next day. *Id*. at 325–26. Finding none of Roberts' cited authority persuasive, we conclude that Fourth Circuit precedent addressing the causation prong of a *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity.

Having established that actual knowledge is required to establish a Title VII retaliation claim, we find that Roberts cannot meet this burden. He has not presented evidence, either direct or circumstantial, sufficient to create a question of fact as to whether Glenn knew he had been subjected to or had complained of harassment when Glenn decided to terminate his employment. Glenn disclaims any knowledge of the harassment, and no evidence in the record contradicts his denial. Roberts acknowledges he did not tell Glenn despite having met with him twice. Further, there is no evidence that those who received the complaints reported them to Glenn or were later involved in the termination decision. Nor is there any evidence based on any individual's behavior, actions, or comments that Glenn knew of the protected activity. Roberts' burden here requires "more evidence than mere curious timing coupled with speculative theories" about "discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity"

---

[6] Although the plaintiff did not specifically describe her supervisor's harassment as being racially motivated, the decisionmaker had previously volunteered during one of their conversations that her supervisor had wanted to hire someone of a "different race" for her position. *Strothers*, 895 F.3d at 325. This Court found it was not necessary for the plaintiff to inform the decisionmaker of what he already knew—"that Strothers' race was relevant to the harassment." *Id*. at 336.

that "create[] only a speculative inference regarding the decisionmaker's awareness." *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (internal citations omitted). In fact, the evidence leads to the opposite conclusion—that Glenn, as sole decisionmaker, terminated Roberts, and that his decision to do so was not causally related to protected activity of which he was not aware. Roberts has failed to produce evidence sufficient for a factfinder to conclude that Glenn was personally aware of any sexual harassment or that he knew Roberts had reported incidents of sexual harassment to his employees. And a plaintiff cannot establish the causation element of a *prima facie* case where "the relevant decisionmaker was unaware that the plaintiff had engaged in a protected activity." *Dowe*, 145 F.3d at 655.

2.

Roberts' causation arguments are further undermined by the lapse in time between his complaints and his termination. "[A] causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity. *See Johnson*, 2021 WL 31914, at *2 (citing *Lettieri*, 478 F.3d at 650 (employer's post-complaint retaliatory conduct prior to termination may be used to establish causation where temporal proximity is lacking));

25

*Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (absent other facts, temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be "very close" to establish the causation prong). But here, Glenn Industrial argues that Roberts' evidence regarding the timing of his firing does not support his retaliation claim. We agree.

In *Dowe*, the plaintiff alleged Title VII retaliation when she was terminated three years after filing a discrimination charge with the EEOC. 145 F.3d at 653. We held that

> evidence that [an] alleged adverse action occurred *shortly* after the employer became aware of the protected activity is sufficient to "satisf[y] the less onerous burden of making a *prima facie* case of causa[tion]." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). We believe the opposite to be equally true. A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two. *See Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir. 1982) (holding that three years between the protected activity and the adverse employment action was too long to establish the third element); *Clark v. Chrysler Corp.*, 673 F.2d 921, 930 (7th Cir. 1982) (holding that two-year time lapse negated any inference of causal connection).

*Id.* at 657 (emphasis in original); *see also Clark Cnty. Sch. Dist.*, 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'"); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (same).

Although there is no "bright-line rule" for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a

26

causal link. *See King v. Pulaski Cnty. Sch. Bd.*, 195 F. Supp. 3d 873, 886 (W.D. Va. 2016). For example, this Court has held that a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation "is too long to establish a causal connection by temporary proximity alone." *Pascual*, 193 F. App'x at 233. This Court has also found that, absent other evidence of a causal relationship, "a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)).

Roberts' termination—three months after his last report of harassment—did not "closely follow" a protected activity, and thus does not present a circumstance that courts have characterized as creating a strong inference of retaliation. Nor is it a years-long gap that would tend to prove the opposite. But we conclude that under these facts, a three-month period between the protected activity and the adverse action does not support a finding that there is a causal link, particularly in the absence of any concrete, non-speculative evidence that Glenn had any knowledge of the harassment allegations.

"As this Court has held, establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden." *Strothers*, 895 F.3d at 335 (citing *Foster*, 787 F.3d at 251; *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a *prima facie* case of retaliation.") (citation omitted)). But what little evidence we have here, taken in the light most favorable to Roberts, is simply not enough to support his retaliation claim. Glenn disavows any prior

27

knowledge of Roberts' harassment or complaints, and in the absence of evidence to the contrary, or of any retaliatory animus, the lack of temporal proximity only serves to undercut what was already a speculative causal connection.  We conclude therefore that no reasonable jury could find a causal link between Roberts' harassment complaints and his termination three months later where Glenn knew nothing of the complaints when he fired him.

IV.

For the foregoing reasons, we affirm summary judgment as to Roberts' Title VII retaliation claim but vacate summary judgment as to his claim of same-sex sexual harassment and remand this claim to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART*