**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-2424**

———————

JUSTIN J. WHITE

        Plaintiff – Appellant,

   v.

VANCE COUNTY SHERIFF; PETER WHITE, in his official and individual capacities; WELDON W. BULLOCK, in his official and individual capacities; LAWRENCE D. BULLOCK, in his official and individual capacities; WESTERN SURETY COMPANY, a division of CNA SURETY

        Defendants – Appellees.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:19-cv-00467-BO)

———————

Submitted:  January 5, 2023                Decided:  February 28, 2023

———————

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:** Sharika M. Robinson, THE LAW OFFICE OF SHARIKA M. ROBINSON, Charlotte, North Carolina, for Appellant. Christopher J. Geis, Brian F. Castro, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A former sheriff's deputy sued the sheriff and others alleging retaliation, disparate treatment, and a hostile work environment based on race and sexual orientation, as well as various state-law claims. The district court dismissed the county because it was not the former deputy's employer and granted summary judgment for the other defendants on the remaining claims. Seeing no reversible error, we affirm.

I.

Justin White's tenure as a sheriff's deputy was short and troubled. White initially encountered issues because he disagreed with his supervisors' enforcement priorities. In January 2018, White told his second-level supervisor that he "only had one father" who "was a large black man and . . . the decisions [White] made about how to do his job were his decisions and won't nobody going to tell him what to do." JA 2352. White received an official reprimand, which he signed and acknowledged. He was then suspended without pay for five days.

White was assigned a new supervisor upon his return to duty, but the problems did not stop there. In March 2018, White backed his patrol car into another car during a traffic stop. Although White initially claimed his blue lights were activated throughout the incident, video footage showed White turned his lights on only after causing the accident. In June 2018, White got a middling performance review from his supervisors.

White filed two internal complaints with the sheriff. The first expressed displeasure about his performance review. The second was labeled "Title VII Civil Rights Act of 1964-Race & Gender Discrimination." JA 81. In the Title VII complaint, White argued his

2

suspension was a "civil rights violation" because the sheriff credited a white man's version of events over his own. White also asserted it took too long for him to get a bulletproof vest and this delay evidenced a pattern of discrimination. The sheriff responded about a month later, emphasizing White "admitted to saying the things . . . listed in the official written reprimand signed by you" and denying race played a role in White's suspension. JA 87.

White filed an EEOC charge in August 2018 claiming retaliation and disparate treatment based on his race and sex. The Vance County human resources department was told about White's EEOC charge in mid-September 2018.

In October 2018, White learned a woman he had stopped earlier in the day for speeding had a years' old arrest warrant for suspected shoplifting. Hoping to arrest her, White went to the woman's home around 2 a.m. After the woman did not answer the door, White returned hours later and—during an arrest—broke the woman's arm. Two days later, the sheriff accepted a senior officer's recommendation and fired White. After being fired, White filed an amended EEOC charge containing two new allegations. First, White alleged a higher-ranking officer called him gay and made a lewd joke about White's sexual orientation, for which the officer soon apologized. Second, White alleged finding a purple unicorn hat in his mailbox.

White sued the county, the sheriff's office, the sheriff, and two members of the sheriff's office. On top of the allegations recounted above, the amended complaint alleged Black employees at the sheriff's office were subject to critical and hostile comments. When asked about such remarks during his deposition, White testified about hearing the n-word

3

three times during the summer of 2018. First, White heard an Indian American deputy use the word in a colloquial greeting to a different Black officer. Second, White heard a higher-ranking white co-worker use the same phrase when mocking the Indian American deputy for greeting his coworker in that way. Finally, White overheard a higher-ranking officer (who is white and may have been White's supervisor at the time) sing along to a song including the word.[1]

The district court entered judgment for all defendants on all of White's claims. The court granted the county's motion to dismiss, concluding it had no employment relationship with White, and later granted summary judgment for the remaining defendants. We review both types of decision de novo. See *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021).

II.

The district court correctly dismissed White's claims against the county on the ground it was not White's employer. Although White emphasizes the county hosted an employee orientation, gave White a personnel manual, and paid White's salary, his argument faces an insurmountable problem. North Carolina vests sheriffs (not counties) with "the exclusive right to hire, discharge, and supervise the employees in [their] office[s]," N.C. Gen. Stat. § 153A-103, and "North Carolina courts interpret this statute to preclude county liability for personnel decisions made by sheriffs." *Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir. 2000). Indeed, the Supreme Court of North Carolina has directly

---

[1] Although these instances were not detailed in White's EEOC charge or amended charge, defendants do not object to our consideration of them.

4

stated that "a deputy sheriff . . . *is not a county employee*." *Young v. Bailey*, 781 S.E.2d 277, 280 (N.C. 2016) (emphasis added).

## III.

We also conclude the district court properly granted summary judgment for the remaining defendants.

## A.

To succeed on his hostile work environment claims, White must show: "(1) unwelcome conduct; (2) that is based on [White's] protected status; (3) which is sufficiently severe or pervasive to alter [White's] conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) (quotation marks omitted).

White's evidence fails this test as a matter of law. To be clear, this Court has recognized the n-word is such "pure anathema" that even a single use may be sufficient to create a hostile work environment. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (en banc). But White does not show the words here were received as racial epithets, nor does he demonstrate any of the statements were made or blessed by anyone with supervisory authority over him. Similarly, White's sex-based hostile work environment claim fails because two isolated instances of teasing (one of which was followed by an apology) are not severe or pervasive enough to alter White's conditions of employment.

5

B.

On his disparate treatment claim, White must carry an initial burden of showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[2] *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). But White's performance was not satisfactory, and the circumstances of his termination do not give rise to a discriminatory inference. Nor can White's proposed comparators—who are either too vaguely described or too different from White—save his claim. See White Br. 44–45 (offering three comparators, two of whom are senior officers, and one of whom—although of equal rank—was merely present when his poorly trained police dog bit someone).

C.

White's retaliation claim fares no better. To make out a prima facie case, White must show: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link between the two events. See *Boyer-Liberto*, 786 F.3d at 281.

Even assuming White could succeed on the first two elements, he fails on causation. There is a four-month gap between White's protected activity (complaining to the sheriff

---

[2] White alternatively argues he can prevail on his disparate treatment claim without the *McDonnell Douglas* burden-shifting framework because he has direct evidence of discrimination. See *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 n.4 (4th Cir. 2005). In our view, however, none of White's evidence comes close to directly showing disparate treatment based on race or sexual orientation.

6

about perceived Title VII violations) and his adverse employment action (being fired), which is too long to support an inference of causation based on temporal proximity alone. See *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 127 (4th Cir. 2021) (explaining "absent other evidence," even a two-month gap will "weaken significantly the inference of causation" between the protected action and the alleged retaliatory conduct (quotation marks omitted)). Nor do other circumstances create a genuine issue of material fact about whether the sheriff's proffered reason for White's termination was pretextual. Rather, the sheriff has consistently (and plausibly) maintained White was fired because he broke a woman's arm—the culmination of an otherwise unsuccessful stint at the sheriff's office.

## D.

Even assuming White's state-law claims had merit, White forfeited any arguments against summary judgment because his opening brief takes only a "passing shot" at the issues. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Indeed, the opening brief's treatment of White's state-law claims reads, in its entirety: "The [district] court also dismissed . . . White's state law claims for reasons that are controverted or not supported by the record. As such, those claims should be remanded." White Br. 55 n.5. Such cursory treatment fails to preserve White's request for appellate review of the district court's resolution of his state-law claims.

\*     \*     \*

The judgment of the district court is

*AFFIRMED*.

7